**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS WILSON,** | : | **No. 3:15cv249** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **MOUNT AIRY #1, LLC,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

This disability discrimination matter arises from Plaintiff Thomas Wilson's

(hereinafter "plaintiff") employment as a blackjack and poker dealer with

Defendant Mount Airy #1, LLC (hereinafter "Mt. Airy").  Plaintiff asserts Mt. Airy

failed to accommodate him, discriminated against him because of his

disability, and terminated him in retaliation for requesting accommodations.

Before the court for disposition is Mt. Airy's motion for summary judgment.  For

the reasons that follow, the court will grant in part and deny in part Mt. Airy's

motion.

## Background

Plaintiff began working as a blackjack and poker dealer for Mt. Airy on

June 28, 2010.  (Doc. 23, Def.'s Concise Stmt. of Facts (hereinafter "SOF")

¶¶ 68-74).  Mt. Airy's blackjack dealers must be able to stand for long periods

of time.[1]  (SOF ¶ 18).  Mt. Airy's poker dealers, however, are allowed to sit. (SOF ¶ 21).

Prior to working for Mt. Airy, plaintiff suffered low back injuries resulting from a motor vehicle accident in 1999.  (Doc. 28-6, Dr. Collier letter dated 8/5/15 at 2).  Plaintiff underwent back surgery with a laminectomy, foraminotomies and a fusion of his L4-L5 vertebrae.  (Id.)  Plaintiff asserts his back injuries preclude him from standing for long periods of time.  (Doc. 28-2, Ex. A, Dep. of Thomas Wilson (hereinafter "Wilson Dep.") at 22, 25).[2]

For the first year and a half of plaintiff's employment, Mt. Airy predominately scheduled plaintiff to deal poker.  (Id. at 38, 63-64).  On the occasions during the first year and a half of plaintiff's employment when Mt. Airy scheduled plaintiff to deal blackjack, Mt. Airy moved plaintiff from dealing blackjack to poker when plaintiff notified Mt. Airy that his back hurt.  (Id. at 33, 48, 74).  The parties dispute why Mt. Airy stopped accommodating plaintiff's requests to deal poker a year and a half into his employment.

---

[1]  Mt. Airy's Director of Table Games testified that blackjack dealers must stand continuously for one hour and twenty minutes before receiving a twenty minute break.  (Doc. 28-5, Ex. D, Dep. of Dennis Asselta (hereinafter "Asselta Dep.") at 7,12).

[2]  All deposition citation page numbers refer to the electronic case file page number located in the upper right-hand corner of the electronically filed document.

In April 2012, plaintiff submitted an employee incident report to Mt. Airy complaining that his supervisors stopped transferring him from blackjack to poker when his back hurt.  (SOF ¶ 93).  Instead, plaintiff's supervisors sent him home with attendance points.[3]  (Id.)

Mt. Airy's human resources and management reviewed plaintiff's request and concluded that plaintiff's request to deal poker exclusively could not be accommodated because, "based on the fluctuating operational needs of the casino, no dealers could be guaranteed a particular game while also maintaining full-time [employment]."  (SOF ¶ 95).  Additionally, Mt. Airy determined it would be "unfair and inconsistent to the remainder of the staff, and not feasible to manage from an operational standpoint."  (SOF ¶ 96).  Thus, Mt. Airy notified plaintiff that it could not accommodate his request to deal poker exclusively.  (SOF ¶¶ 97-98).

Mt. Airy eventually terminated plaintiff pursuant to its attendance policy.  (SOF ¶¶ 57-60).  Specifically, on December 7, 2013, plaintiff surpassed his allotted ten points.  (SOF ¶ 125).  Mt. Airy's scheduling system alerted

---

[3]  Mt. Airy assigns its employees specific points for absences (1 point), failure to complete shift (½ point), and a variety of points for other absence issues.  (SOF ¶ 57).  Pursuant to this policy, Mt. Airy terminates employees that have accumulated ten (10) points in a rolling twelve month period of active employment.  (Id.)

management plaintiff surpassed the ten-point threshold, and management terminated plaintiff's employment.  (SOF ¶¶ 126-27).  Plaintiff asserts several attendance points are directly attributed to Mt. Airy's failure to accommodate his disability.  (Wilson Dep. at 67, 72).

On February 4, 2015, plaintiff filed a three-count complaint.  (Doc. 1, Compl.).  Count I alleges Mt. Airy failed to accommodate plaintiff, discriminated against him because of his disability and terminated him in retaliation for requesting accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (hereinafter "ADA").  (Id. ¶¶ 36-42).  Count II claims Mt. Airy failed to accommodate plaintiff, discriminated against him because of his disability and terminated him in retaliation for requesting accommodations in violation of Pennsylvania's Human Relations Act, 43 PA. STAT. ANN. § 951, *et seq*. (hereinafter "PHRA").  (Id. ¶¶ 43-45).  Count III asserts claims for interference and retaliation in contravention of the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq* (hereinafter "FMLA").  (Id. ¶¶ 46-55).[4]  After discovery, Mt. Airy moved for summary judgment.  (Doc. 21).  The parties briefed their respective positions and the matter is ripe for disposition.

---

[4]  Plaintiff voluntarily withdraws his claims under the FMLA.  (Doc. 28, Pl.'s Br. in Opp'n at 6 n.1).  Accordingly, Mt. Airy's motion for summary judgment on these issues will be granted as unopposed.

4

**Jurisdiction**

As this case is brought pursuant to the ADA for unlawful employment discrimination, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine

the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  Id. at 324.

**Discussion**

Mt. Airy's motion for summary judgment raises the following four (4) issues: 1) Does the statute of limitations preclude plaintiff's ADA failure to accommodate claim?  2) Is Mt. Airy entitled to summary judgment on the merits of plaintiff's ADA accommodation claim?  3) Does plaintiff's ADA

6

disability discrimination claim fail on the merits? and 4) Is Mt. Airy entitled to

summary judgment on plaintiff's ADA disability retaliation claim?  The court will

address these issues *in seriatim*.

## I.  Statute of limitations

Mt. Airy first moves for summary judgment on plaintiff's failure to

accommodate claim, contending this claim is untimely under federal and state

statutes of limitations pertaining to discrimination claims.  Plaintiff argues his

failure to accommodate claim is timely because discrete acts of discrimination

occurred within the applicable limitations periods.  After a careful review, the

court agrees with the plaintiff.

Under state law, a plaintiff must file a claim of discrimination with the

state or federal agency charged with processing these claims within 180 days

of the alleged discrimination.  43  PA. CONS. STAT. ANN. § 959(h).  Federal

claims of discrimination pursuant to the ADA must be filed with the EEOC

within 300 days of the alleged discrimination.  42 U.S.C. § 2000e–5(e)(1).[5]

_____

[5]  Generally, the limitations period under the federal laws is 180 days.
If, however, the plaintiff "initially instituted proceedings with a State or local
agency with authority to grant or seek relief from such practice" in which case
the limitation period is 300 days.  42 U.S.C. § 2000e–5(e).  In the instant
case, plaintiff "cross-filed" an initial administrative charge with the
Pennsylvania Human Relations Commission ("PHRC") and the United States
Equal Employment Opportunity Commission ("EEOC").  (Doc. 23-5, Ex. 30,
Pl.'s Charge of Discrimination dated 12/23/13).  Thus the 300-day limitations

Here, the parties agree plaintiff cross-filed his failure to accommodate claim with the EEOC and PHRC on December 23, 2013.  (SOF ¶¶ 131-32). Thus, plaintiff's failure to accommodate claim is timely under state law if the discriminatory conduct occurred within 180 days of the alleged discrimination– between June 26, 2013 and December 23, 2013.  For plaintiff's failure to accommodate claim to be timely under federal law, the discriminatory conduct must have occurred between February 26, 2013 and December 23, 2013. Stated differently, the limitations period precludes events prior to June 26, 2013 on plaintiff's state PHRA claim and February 26, 2013 on plaintiff's federal ADA claim.

Mt. Airy argues that plaintiff has presented no evidence establishing that it failed to accommodate him during the applicable limitations periods. Specifically, plaintiff, on only one occasion, requested an accommodation of sedentary work–to deal poker exclusively–in April 2012, which Mt. Airy denied on April 11, 2012.  (SOF ¶¶ 93-96, 98).  Because plaintiff's request for an accommodation and its subsequent denial occurred prior to the state and federal limitations periods, Mt. Airy argues the statute of limitations precludes plaintiff's state and federal failure to accommodate claims.  Accordingly, the

---

period applies to plaintiff's federal discrimination claim.  Mandel v. M&Q Packaging Corp., 706 F.3d 157, 164-65 (3d Cir. 2013).

8

burden shifts to plaintiff, who must go beyond his pleadings, and designate specific facts demonstrating the existence of a genuine issue for trial.  Celotex, 477 U.S. at 324.

Here, plaintiff goes beyond his pleadings and designates disputed material facts regarding requests for accommodations within the limitations period–that is, between June 26, 2013 and December 23, 2013 on plaintiff's state PHRA claim and February 26, 2013 and December 23, 2013 on plaintiff's federal ADA claim.  For example, plaintiff informed management on October 5, 2013, that he had problems with his back and requested an accommodation to deal poker.  (Doc. 28-19, Ex. R, Decl. of Thomas Wilson (hereinafter "Wilson Decl.") ¶¶ 5-6; Wilson Dep. at 52, 67,73).  Additionally, plaintiff's supervisors testified that plaintiff requested to be moved to the poker room whenever they disciplined plaintiff for not being able to complete his entire blackjack dealer shift–including October 2013.[6]  (Doc. 28-4, Ex. C, Dep. of Douglas Hayes (hereinafter "Hayes Dep.") at 13,15; Doc. 28-11, Ex. J, Dep. of Thomas Tomasello (hereinafter "Tomasello Dep.") at 9-10).  Viewing plaintiff's credible evidence in the light most favorable to plaintiff, a reasonable juror could

---

[6]  The Third Circuit Court of Appeals has determined that requests for accommodation do not have to be in writing nor formally invoke the magic words "reasonable accommodation."  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999).

conclude that discrete acts of discrimination occurred within the state and federal limitations periods.[7]  Accordingly, the court will deny Mt. Airy's motion for summary judgment on this issue.

## II.  Failure to accommodate under the ADA[8]

Plaintiff first asserts a failure to accommodate claim under the ADA.  The ADA provides that an employer "discriminates" against a qualified individual with a disability when the employer does not "'mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'" Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 761 (3d Cir. 2004)

---

[7]  Mt. Airy counters that the Third Circuit Court of Appeals has noted that a plaintiff may not reassert a previously denied request for accommodation.  In Mercer v. SEPTA, the Third Circuit determined that the statute of limitations precluded plaintiff's failure to accommodate claim because plaintiff failed to specify incidents in which SEPTA failed to accommodate his disability **within the limitations period**.  608 F. App'x 60, 63 (3d Cir. 2015).  In the instant matter, plaintiff **has** demonstrated independently recoverable denials of a requested accommodation. Specifically, Mt. Airy may have failed to accommodate plaintiff in October 2013, and as discussed infra, Mt. Airy's potential failure to engage in the interactive process in October 2013 may also be a discrete act of discrimination under the ADA.

[8]  Our analysis under the ADA applies equally to plaintiff's claims under the PHRA.  Gafliardo v. Connaught Labs., Inc., 311 F.3d 565, 568 n.2 (3d Cir. 2002) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996)).

(internal citations omitted); 42 U.S.C. § 12112(b)(5)(A).

To determine the appropriate reasonable accommodation, the ADA requires that an employer and employee engage in the "interactive process."[9] Specifically, "[o]nce a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation.  The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability."  29 C.F.R. pt. 1630, app. § 1630.9.  Both parties bear responsibility in this process.  Taylor, 184 F.3d at 312.

To establish that Mt. Airy did not properly engage in the "interactive process," plaintiff must demonstrate that: "(1) Mt. Airy knew about plaintiff's disability; (2) plaintiff requested accommodations or assistance for his disability; (3) Mt. Airy did not make a good faith effort to assist plaintiff in seeking accommodations; and (4) plaintiff could have been reasonably accommodated but for Mt. Airy's lack of good faith."  Conneen v. MBNA Am. Bank, N.A., 334 F.3d 313, 330-31 (3d Cir. 2003); Taylor, 184 F.3d at 319-20.

---

[9]  The phrase "interactive process" describes the employer's duty to determine with a disabled employee if a reasonable accommodation exists that would qualify the employee to perform the essential functions of her job. Taylor, 184 F.3d at 317; 29 C.F.R. § 1630.2(o)(3).

In the instant matter, Mt. Airy does not dispute for purposes of this motion that plaintiff suffered from a disability. (Doc. 22, Def.'s Br. in Supp. Mot. Summ. J. at 13 n.2). Additionally, the court has previously determined that plaintiff requested an accommodation for his disability–to be a sedentary poker-only dealer. Thus, the court must determine whether Mt. Airy made a good faith effort to assist plaintiff in seeking accommodation and whether plaintiff could have been reasonably accommodated but for Mt. Airy's lack of good faith.

### A. Mt. Airy's good faith effort to assist plaintiff in seeking accommodation

The third "interactive process" element requires plaintiff to establish that Mt. Airy did not make a good faith effort to assist him in seeking an accommodation. Conneen, 334 F.3d at 330. Examples of failing to act in good faith include "failure by one of the parties to help the other party determine what specific accommodations are necessary[,] . . . obstruct[ing] or delay[ing] the interactive process[,] . . . [and] fail[ing] to communicate, by way of initiation or response[.]" Taylor, 184 F.3d at 312 (citation omitted).

Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that Mt. Airy may have failed to make a good faith effort to assist plaintiff in seeking an accommodation. Plaintiff has established that he

12

informed Mt. Airy on October 5, 2013, and many other occasions, that he had

problems with his back and requested an accommodation to deal poker.

(Wilson Decl.  ¶¶ 5-6; Wilson Dep. at 52, 67,73; Hayes Dep. at 13,15;

Tomasello Dep. at 9-10).  Mt. Airy, however, failed to assist plaintiff in seeking

a potentially mutually agreeable work arrangement such as working shorter

shifts in blackjack, providing plaintiff with additional attendance points or

obtaining a handicapped blackjack table.  In fact, Mt. Airy's Director of Table

Games testified that Mt. Airy does "not make accommodations [for medical

conditions]."  (Asselta Dep. at 21-22).  Therefore, a reasonable jury could

conclude that Mt. Airy did not make a good faith effort to assist plaintiff in

seeking an accommodation.

**B.  Mt. Airy's lack of good faith regarding plaintiff's reasonable accommodation**

The fourth "interactive process" element requires plaintiff to establish

that he could have been reasonably accommodated but for Mt. Airy's lack of

good faith.  Plaintiff argues that reasonable accommodation is possible

because Mt. Airy accommodated him for the first year and a half of his

employment.  Specifically, Mt. Airy predominately scheduled plaintiff to deal

only poker and, on those occasions plaintiff dealt blackjack, Mt. Airy moved

plaintiff to poker when he complained of back pain.  Mt. Airy contends

13

reasonable accommodation is not possible and places an undue hardship on it. After a careful review, the court finds genuine issues of material fact preclude summary judgment on this issue.

The issue of reasonable accommodation is a question for the trier of fact. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 614 (3d Cir. 2006)  In deciding whether a genuine issue of material fact exists regarding the reasonableness of the requested accommodation, the court must first examine whether the plaintiff has made a *prima facie* showing that his proposed accommodation is possible. Id.  If he has done so, the burden then shifts to the defendant to prove, as an affirmative defense, that the accommodation requested by the plaintiff is unreasonable or would cause undue hardship. Id.

Plaintiff easily satisfies his *prima facie* burden that his proposed reasonable accommodation to be a sedentary poker-only dealer is possible for four reasons. First, plaintiff is certified to deal poker. (Wilson Dep. at 31). Second, Mt. Airy allows poker dealers to remain seated while dealing poker. (Asselta Dep. at 7).  Third, Mt. Airy, for the first year and a half of plaintiff's employment, predominately scheduled plaintiff to deal poker. (Wilson Dep. at 38, 63-64; Hayes Dep. at 8). Finally, Mt. Airy previously accommodated plaintiff by moving plaintiff from dealing blackjack to poker when plaintiff

14

notified Mt. Airy that his back hurt.  (Wilson Dep. at 33, 48, 74).  Ergo, the burden shifts to Mt. Airy to establish, as an affirmative defense, that plaintiff's requested accommodation to be a poker-only dealer is unreasonable or would cause Mt. Airy undue hardship.

The ADA considers an unreasonable accommodation request one that requires an employer to reallocate the essential functions of a position. Deane v. Pocono Med. Ctr., 142 F.3d 138, 146-47 (3d Cir. 1998).  Further, an "undue hardship" is "an action requiring significant difficulty or expense, when considered in light of [a series of factors]."[10]  42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1630.2(p).  In making a claim of undue hardship, the employer is required to provide sufficient evidence that the reasonable "accommodation will, in fact, cause it undue hardship;" it is not enough for the employer simply to assert that it will suffer undue hardship.  Turner, 440 F.3d at 614; 29 C.F.R. § 1630.15(d).

Mt. Airy argues plaintiff's accommodation request to be a sedentary poker-only dealer is unreasonable and imposes an undue hardship on Mt. Airy for two reasons: 1) The essential functions of a Table Games Dealer position

---

[10]  Among the factors to be considered are "the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility."  42 U.S.C. § 12111(10)(B).

require the dealer to stand and deal two games; and 2) Mt. Airy's business operations and scheduling system preclude any such accommodation.  The court will address these issues *in seriatim*.

Initially, Mt. Airy, argues plaintiff's request to be a sedentary poker-only dealer is unreasonable because the essential functions of Mt. Airy dealer positions require the dealer to stand and deal two different types of games. The Third Circuit Court of Appeals has found that "whether a particular function is essential 'is a factual determination that must be made on a case by case basis based upon **all** relevant evidence.'" Deane, 142 F.3d at 148 (quoting 29 C.F.R. § 1630.2(n)) (emphasis in the original).  Whether a job duty is an "essential function" turns on whether it is "fundamental" to the employment position.  Turner, 440 F.3d at 612 (citing 29 C.F.R. § 1630.2(n)(1)).

Mt. Airy employed plaintiff as a poker and blackjack dealer.  (SOF ¶¶ 73-75).  The dealer job description requires dealers to meet attendance guidelines and stand for long periods of time.  (SOF ¶ 18).  Mt. Airy also claims that all dealers are required to deal at least two games.  (SOF ¶ 20).  According to Mt. Airy, plaintiff's request to be a sedentary poker-only dealer is therefore unreasonable because plaintiff would not be performing the essential functions

16

of a dealer position–standing and dealing two games.

Plaintiff counters that genuine issues of fact require a jury to determine the essential functions of Mt. Airy's table games dealer position.  Specifically, Mt. Airy's table games director, Dennis Asselta, testified that dealer's are not required to be certified in more than one game.  (Asselta Dep. at 21).  Mr. Asselta also stated that Mt. Airy's poker and baccarat dealers sit while dealing.  (Id. at 7).  This testimony may contradict Mt. Airy's contention that all dealers are required to stand and deal two games.  See Deane, 142 F.3d at 148 (determining that an employer's job description is not conclusive on the issue of whether heavy lifting is an essential job function, and the issue must be resolved at trial); Skerski v. Time Warner Cable Co., 257 F.3d 273, 280-83 (3d Cir. 2001) (holding that a genuine issue of material fact existed as to whether climbing is an essential function); Turner, 440 F.3d at 613 (noting that the Third Circuit Court of Appeals has historically refused to determine a position's essential functions at summary judgment; rather, this issue is for the jury to decide).  Thus, a jury must resolve the factual issue regarding the essential functions of Mt. Airy's Table Games Dealer position.

Mt. Airy also argues plaintiff's requested accommodation places an undue hardship on it.  Specifically, Mt. Airy's scheduling system, Schedule

17

Ease, cannot accommodate plaintiff's request.  Schedule Ease generates Mt.

Airy's table games schedule, taking into account shifts, days off, and skill

ratings for approximately 250 dealers.  (SOF ¶¶ 30-37).  Schedule Ease simply

cannot accommodate all the schedule requests and game preferences it

receives from dealers, thereby placing an undue hardship on Mt. Airy because

it would need to purchase or secure an entirely new scheduling system.

Plaintiff contends Mr. Asselta's testimony undermines Mt. Airy's alleged

undue hardship argument.  Mr. Asselta stated that to accommodate plaintiff's

request to be a poker-only dealer, he would simply remove plaintiff's

certifications in the scheduling system to deal all other games except poker.

(Asselta Dep. at 10).  Alternatively, Mt. Airy management has the ability to

manually change shifts.  (Id.)  Viewing the evidence in plaintiff's favor, the

court cannot conclude as a matter of law that plaintiff's requested

accommodation would impose an undue hardship on Mt. Airy.  See Turner,

440 F.3d at 614 (noting that an employer asserting an undue hardship claim

must demonstrate that the "accommodation will, in fact, cause it undue

hardship"; it is not enough for the employer simply to assert that it will suffer

undue hardship).

In short, genuine issues of material fact exist regarding whether Mt. Airy

18

made a good faith effort to assist plaintiff in seeking accommodations and whether Mt. Airy could have reasonably accommodated plaintiff but for Mt. Airy's lack of good faith.  Furthermore, the questions of whether plaintiff can perform the essential functions of his position with reasonable accommodation and whether plaintiff's proposed accommodation is unreasonable or places an undue hardship on Mt. Airy are open questions of material fact that must be decided at trial.  Thus, the court will deny Mt. Airy's motion for summary judgment pertaining to plaintiff's failure to accommodate claim.

## II. Disability discrimination

Plaintiff also asserts an ADA disability discrimination claim.  The ADA provides that an employer cannot discriminate against a qualified individual with a disability because of his disability in regard to his employment.  42 U.S.C. § 12112(a).  The plaintiff has the initial burden in an ADA matter of establishing a *prima facie* case.  Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996).

To establishes a *prima facie* ADA disability discrimination claim, a plaintiff must demonstrate that: 1) he's disabled within the meaning of the ADA; 2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) he has

19

suffered an otherwise adverse employment decision as a result of

discrimination.  <u>Shiring v. Runyon</u>, 90 F.3d 827, 831 (3rd Cir. 1996).

        If the plaintiff meets this initial burden, the court then applies the next

step in "the familiar burden-shifting framework of <u>McDonnell Douglas Corp. v.

Green</u>, 411 U.S. 792, 803-805 (1973)."  <u>Abramson v. William Patterson Coll.</u>,

260 F.3d 265, 281 (3d Cir. 2001).  The burden of production shifts to the

employer to "proffer a legitimate, non-discriminatory reason for the adverse

employment decision."  <u>Id.</u> at 282.  An employer need only introduce "evidence

which, taken as true, would permit the conclusion that there was a

nondiscriminatory reason for the unfavorable employment decision."  <u>Fuentes

v. Pierske</u>, 32 F.3d 759, 763 (3d Cir. 1994).  "The employer need not prove

that the tendered reason actually motivated its behavior, as throughout this

burden-shifting paradigm the ultimate burden of proving intentional

discrimination always rests with the plaintiff."  <u>Id.</u> (emphasis in original).

        Once the employer meets this burden, the plaintiff must show that a jury

"could reasonably either (1) disbelieve the employer's articulated legitimate

reasons; or (2) believe that an invidious discriminatory reason was more likely

than not a motivating factor or determinative cause of the employer's action."

<u>Id.</u> at 764.  The court will address each step of this burden shifting framework

20

in turn.

### A.  Plaintiff's *prima facie* case

As previously stated, a plaintiff establishes a *prima facie* case of ADA disability discrimination when he demonstrates that: 1) he is disabled within the meaning of the ADA; 2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) he has suffered an otherwise adverse employment decision as a result of discrimination.  Shiring, 90 F.3d at 831.  Mt. Airy does not dispute plaintiff is disabled within the meaning of the ADA.  (Doc. 22, Def.'s Br. in Supp. Mot. for Summ. J. at 13 n.2).  Rather, Mt. Airy argues plaintiff could not perform the essential functions of the dealer position with or without reasonable accommodations.  Mt. Airy also contends plaintiff has not suffered an adverse employment decision.  The court addresses these issues in order.

### 1.  Qualified to perform essential functions

The second element of plaintiff's *prima facie* case requires him to establish that he is a "qualified individual".  The ADA defines this term as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The Third Circuit Court of Appeals divides

this inquiry into two parts: (1) whether the person possesses "the requisite skill, experience, education and other job-related requirements" for the position; and (2) whether the individual is able to perform the essential functions of the position desired or held with or without reasonable accommodation.  Deane, 142 F.3d at 145 (quoting 29 C.F.R. § 1630.2(m)).

In the instant matter, Mt. Airy does not dispute plaintiff's qualifications to deal blackjack and poker.  (See SOF ¶ 72 (noting plaintiff completed training in poker and blackjack)).  Thus, the court need only address whether plaintiff can perform the essential functions of Mt. Airy's dealer position with or without reasonable accommodation.

Because Mt. Airy's arguments pertaining to the essential functions of the dealer position are almost identical to those previously discussed regarding whether plaintiff could have been reasonably accommodated but for Mt. Airy's lack of good faith, the analysis given above is equally applicable here.  Ergo, genuine issues of material fact exist regarding whether plaintiff is a qualified individual under the ADA.

## 2.  Adverse employment decision

Mt. Airy next argues plaintiff cannot establish the third element of his *prima facie* case–that he suffered an adverse employment decision as a result

of discrimination.  The Third Circuit Court of Appeals, however, has held that

adverse employment decisions "include [an employer] refusing to make

accommodations for a plaintiff's disabilities."  Williams, 380 F.3d at 761; see

also Turner, 440 F.3d 604, 611 n.4 (3d Cir. 2006) (finding that "the failure to

reasonably accommodate a disabled and qualified employee constitutes an

adverse employment action for purposes of the ADA.").  Because we

previously have determined genuine issues of material fact exist regarding

whether Mt. Airy made a good faith effort to assist plaintiff in seeking

accommodations, a jury could conclude that Mt. Airy's failure to accommodate

plaintiff's known disabilities demonstrates an adverse employment decision.

### B.  Defendant's nondiscriminatory explanation

Once the plaintiff establishes a *prima facie* case, "the burden of

production shifts to the employer to identify a legitimate non-discriminatory

reason for the adverse employment action."  Smith v. City of Allentown, 589

F.3d 684, 689-90 (3d Cir. 2009).  This burden is "'relatively light'" and is

satisfied if the employer provides evidence, which, if true, would permit a

conclusion that it took the adverse employment action for a non-discriminatory

reason.  Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting

Fuentes, 32 F.3d at 763); see also Lichtenstein v. Univ. of Pittsburgh Med.

23

Ctr., 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").  Mt. Airy has clearly met its burden here.

Mt. Airy asserts it terminated plaintiff's employment when plaintiff surpassed his allotted attendance points.  As previously stated, Mt. Airy's attendance policy outlines a step-discipline approach regarding employee absences.  (SOF ¶¶ 57-60).  Employees are assigned specific points for absences (1 point), failure to complete shift (½ point), and a variety of points for other absence issues.  (SOF ¶ 57).  Pursuant to this policy, Mt. Airy terminates employees that have accumulated ten (10) points in a rolling twelve-month period of active employment.  (Id.)

On December 7, 2013, plaintiff surpassed his allotted ten points.  (SOF ¶ 125).  Mt. Airy's scheduling system alerted management plaintiff surpassed the ten point threshold, and management terminated plaintiff's employment. (SOF ¶¶ 126-27).  Therefore, the undisputed record evidence establishes a legitimate, non-discriminatory reason for plaintiff's termination.

### C. Pretext

Having established a legitimate reason for plaintiff's termination, the burden of production shifts back to plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is

24

merely a pretext for discrimination." Burton, 707 F.3d at 426; see also Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008) (explaining that, "to defeat a motion for summary judgment, [the plaintiff] must show that the employer's articulated reason was a pretext for intentional discrimination").

To establish pretext, plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764.  The first Fuentes prong is relevant here.

Under this test, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id. at 765 (citation and internal question marks omitted).  In so doing, he must "do more than show that [the defendant] was wrong or mistaken in deciding to lay him off.  He must present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." Tomasso, 445 F.3d at 706 (internal citation and quotation marks omitted); see also Keller v. Orix Credit

Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (explaining that a plaintiff must demonstrate that the employer's proffered reason was wrong, "but that it was so plainly wrong that it cannot have been the employer's real reason.").

In the instant case, Mt. Airy argues it terminated plaintiff's employment because plaintiff accumulated too many attendance points within a twelve-month period.  Mt. Airy also contends plaintiff could not perform the essential functions of its dealer position.

Plaintiff, however, has presented evidence demonstrating that these reasons are potentially pretext.  For example, as explained above, plaintiff has presented evidence that he could perform the dealer position with accommodation.  Moreover, Mt. Airy accommodated plaintiff for the first year and a half of his employment and then stopped accommodating plaintiff's requests to move from dealing blackjack to poker.  Mt. Airy provides no justification for this change in policy.  In fact, Mt. Airy's director of Table Games testified that Mt. Airy does "not make accommodations [for medical conditions]."  (Asselta Dep. at 21-22).

The court cannot weigh the probative value of plaintiff's competent evidence and compare it to Mt. Airy's reasons for plaintiff's termination.  Rather, at the summary judgment stage, reasonable inferences must be drawn

in favor of the nonmoving party.  Int'l Raw Materials, Ltd. 898 F.2d at 949.

Viewing plaintiff's evidence in the light most favorable to him, genuine issues

of material fact exist regarding whether Mt. Airy's proffered reason for plaintiff's

termination is pretext for disability discrimination.  Accordingly, plaintiff has

provided sufficient evidence which, if credited by the jury, could establish

disability discrimination in the instant case.  Mt. Airy's motion for summary

judgment on plaintiff's disability discrimination claim will thus be denied.

## III.  ADA retaliation

Mt. Airy also moves for summary judgment on plaintiff's ADA retaliation

claim.  To establish a *prima facie* case of retaliation under the ADA, a plaintiff

must demonstrate "(1) protected employee activity; (2) adverse action by the

employer either after or contemporaneous with the employee's protected

activity; and (3) a causal connection between the employee's protected activity

and the employer's adverse action."  Krouse v. Am. Sterilizer Co., 126 F.3d

494, 500 (3d Cir. 1997)).  If the plaintiff can meet this burden, the

burden-shifting test described above applies.  Id. at 500-01.

Here, plaintiff cannot establish a causal connection between his request

for an accommodation and his termination.  Ordinarily, a causal connection

may be shown by "(1) an unusually suggestive temporal proximity between the

protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007).

The undisputed evidence establishes plaintiff last requested an accommodation on October 5, 2013.  (Wilson Decl. ¶¶ 5-6; Wilson Dep. at 52, 67,73).  Mt. Airy terminated plaintiff on December 7, 2013, when plaintiff missed work because of a flat tire.  (SOF ¶ 125).  A period of two months, however, is not unduly suggestive of retaliation.  <u>See</u> <u>Williams</u>, 380 F.3d at 760 (holding two months between protected activity and adverse employment action not unduly suggestive).  Nor did plaintiff demonstrate other nefarious activity between the time he last requested an accommodation on October 5, 2013 and the time Mt. Airy terminated his employment.  <u>See</u> <u>Krouse</u>, 126 F.3d at 504 ("When temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." ).  Plaintiff, therefore, has failed to establish a causal connection between his requests for accommodation and his termination.  Thus, the court will grant Mt. Airy's motion for summary judgment on plaintiff's ADA retaliation claim.

**Conclusion**

Based upon the above reasoning, Mt Airy's motion for summary judgment will be granted in part and denied in part.  The court will grant Mt. Airy's motion for summary judgment on plaintiff's FMLA claim and disability retaliation claims under the ADA and PHRA.  The court will deny Mt. Airy's motion in all other respects.  Remaining in the case will be plaintiff's ADA and PHRA failure to accommodate and disability discrimination claims.  An appropriate order follows.

**Date:   12/09/2015**                                  **s/ James M. Munley**
                                                                      **JUDGE JAMES M. MUNLEY**
                                                                      **United States District Court**